KOLINSKI et al. v. THOMPSON VOTING MACH. CO.

(Court of Appeals of District of Columbia. Submitted January 7, 1925. Decided June 1, 1925. Rehearing Denied July 14, 1925.)

No. 4171.

1. Patents ⟨⟩328—Combination of old elements in Bobroff voting machines, for legislative bodies, held novel.

Combination of old elements in Bobroff patent, No. 1,281,901, for voting machine for legislative bodies, held novel and not shown to be inoperative.

2. Patents ⟨⟩328—Claims of Bobroff patent, for legislative voting machine, held to read on defendant's device.

Claims 2 and 4 of Bobroff patent, No. 1,281,901, for voting machine for legislative bodies, held to read on device of defendant.

3. Patents ⟨⟩176—Claims infringed by apparatus not containing all described elements.

That elements are described in claims of plaintiff's patent for voting machine, which are not found in defendant's structure, does not make the claims inapplicable to expressly claimed essential features of defendant's apparatus.

4. Patents ⟨⟩328—Claims of Bobroff patent, for legislative voting machine, held not anticipated.

Claims 2 and 4 of Bobroff patent, No. 1,281,901, for voting machine for legislative bodies, held not anticipated by patents of Stout, Huffman, or Connolly.

5. Patents ⟨⟩328—Claims of Bobroff patent, for legislative voting machine, held to read on defendant's device.

Claims 11 and 12 of Bobroff patent, No. 1,281,901, for voting machine for legislative bodies, held to read on defendant's device.

Appeal from the Supreme Court of the District of Columbia.

Suit by Peter C. Kolinski and another, trustees, against the Thompson Voting Machine Company. From a decree dismissing the bill, plaintiffs appeal. Reversed and remanded.

J. Y. Reeves, of Washington, D. C., and Casanave Young, of Milwaukee, Wis., for appellants.

N. J. Jewett, of Washington, D. C., for appellee.

Before ROBB and VAN ORSDEL, Associate Justices, and SMITH, Judge of the. United States Court of Customs Appeals.

SMITH, Acting Associate Judge. This is an appeal from a decree of the Supreme Court of the District of Columbia, dismissing a bill in equity, praying that the defendants be enjoined from infringing letters patent issued to the plaintiff and for an accounting.

Among other things, the bill of complaint alleges that prior to the 16th day of February, 1915, Bornett L. Bobroff was the true, original, first, and sole inventor of certain new and useful improvements in registering apparatus for voting; that on the 16th of February, 1915, Bobroff filed an application for a patent for his invention, and that a patent therefor was issued to him on the 15th of October, 1918; and that by proper mesne assignments all the right, title, and interest of Bobroff in and to said patent was assigned and transferred to the plaintiffs; that after the issuance of letters patent to Bobroff the apparatus embodying said invention of Bobroff carried in a conspicuous place thereon a notice announcing that the invention represented by the apparatus was covered by letters patent; that notwithstanding said letters patent, and the notice on said apparatus, the defendant, without license or permission of the plaintiffs and against their will, manufactured and used within the District of Columbia an apparatus containing the invention and improvements described and claimed in said letters patent, and persisted in using and demonstrating the apparatus so manufactured by it for the purpose of inducing others to purchase the apparatus, whereby great profits would accrue to the defendant and great loss to the plaintiffs; that the defendant was served with a written notice of the issuance of said patent to Bobroff and of plaintiff's rights thereunder; that, notwithstanding said written notice, the defendant continues and threatens to continue to use and demonstrate said apparatus for the purpose of inducing others to purchase said apparatus from defendant.

The answer of the defendant denied that Bobroff was the true, original, first, and sole inventor of any new and useful improvements in voting machines, and alleged that the application for a patent failed to disclose an operative device. The answer further denied that claims 2, 4, 11, and 12 of the patent constituted true combinations in a patentable sense. The answer also averred that the defendant had not made or demonstrated, or threatened to make or demonstrate, in the District of Columbia or elsewhere, any apparatus embodying Bobroff's invention, or any apparatus described in any of the claims described by his patent. The defendant denied that any gains or profits had accrued or could accrue to it because of the acts of which plaintiffs complained, and that it had caused or intended to cause any loss or damage to the plaintiffs.

It appears from the record that the invention in suit is a voting machine which is designed to supplant roll call and teller voting in parliamentary and other legislative bodies. Attempts to devise a successful voting machine for use by legislative bodies date back as far as 1851, but apparently, up to the time that Bobroff entered the field, no device had been developed which met the acid test of actual practice. To be measurably satisfactory such a machine required, first, accuracy, which demanded (a) a means that would make each individual vote apparent to all; (b) a means which would make it possible for the individual to change his vote, if mistakenly or improvidently made; (c) a means which would prevent the use of individual voting stations after the time for voting had expired; second, speed, which required the feasibility of prompt and even simultaneous voting of those entitled to vote, and for speed it was therefore imperative that there should be provided (a) a means which would enable all voting members to vote at the same time; and (b) a means which on completion of the voting would furnish the totals "for" and "against" and the total "not voting"; and, third, a correct permanent record of the individual and total votes cast.

To meet the requirements of an efficient and satisfactory voting machine, Bornett L. Bobroff devised an electrically operated and controlled apparatus to register the votes of members of legislative bodies and to permanently record such votes. That apparatus permitted the individual voter to change his vote during the voting period. The voting period was terminated by a common means at the main station, which controlled the individual substations, and which, when put into operation prevented further voting. The individual votes as cast were displayed by the apparatus at the substations and at the main station simultaneously.

For that apparatus Bobroff applied for a patent on the 16th of February, 1915, and on that application a patent was issued to

him on the 15th of October, 1918. Claims 2, 4, 11, and 12 of the patent are as follows:

"2. A voting machine comprising a main station including a plurality of indicating mechanisms operable for procuring certain differing indications, a plurality of substations each including means for operating a respective indicating mechanism, and means for automatically indicating the number of indicating mechanisms having corresponding indications."

"4. A voting machine comprising a main station including a plurality of indicating mechanisms each adapted for a neutral indication and operable for procuring certain differing indications, reset means for procuring neutral indications of the respective indicating mechanism, a plurality of substations each including means for operating a respective indicating mechanism, and a substation means for actuating the respective reset means, a main station means for simultaneously actuating all of the reset means and main station means for rendering all of substation means inoperative."

"11. A voting machine comprising a main station including a plurality of indicating mechanisms, individual control means for the indicator mechanisms, a common means for rendering said control means inoperative and means governed by said common means for procuring a permanent record of said indicating mechanisms.

"12. A voting machine comprising a main station including a plurality of indicating mechanisms, individual control means for the indicating mechanisms, a common electric circuit controlling the individual control means, as means for procuring a permanent record of the indicating mechanisms, an electric circuit controlling said permanent record means and a common switch in both circuits."

[1] Every element employed by Bobroff in realizing his invention was apparently old, but Bobroff's combination of them was novel, and there is nothing in the record which would justify us in concluding that the combination for which Bobroff secured a patent is inoperative. A witness for the defendant did testify that the device described in the patent was inoperative for producing more than "one step" for the reason that, in casting the "aye" and "nay" vote, either one impulse or two impulses had to be sent over the line, and that, if one impulse was sent the armature would be pulled down and kept down, thereby preventing a second impulse from having any effect. That conclusion of the witness, however, was based upon the assumption that the teeth shown in figures 3 and 4 of the Bobroff model were not rachet teeth. Upon submission of the model to the witness, however, he admitted that in that particular exhibit the armature returned to its neutral position whereupon it was conceded that if the clutch teeth were constructed as rachet teeth the device was operative. Indeed, the adoption and operation of Bobroff's machine by Wisconsin in 1915, Iowa in 1919, and Louisiana and Texas in 1922, and the continued use of the machine by those states, is rather conclusive evidence that Bobroff's invention is not inoperative.

[2, 3] Defendant's device accomplishes substantially the same results as those effectuated by the apparatus of the plaintiff and comprises, first, individual voting stations for members; second, an indicator board on which the individual votes of the membership are announced; and, third, a main station, which enables the clerk to control the operation of the device and which contains the mechanism for counting, tabulating, and recording the vote. Defendant's device records the vote on a perforated card, from which a photogravure reproduction may be made, thereby obviating the danger of mistakes which would result from setting up the record in type. The lamps on the indicator board of defendant are made operative from its main station by the clerk, and therefore by the voters at the substations. The lamps on the board, therefore, constitute a plurality of indicating mechanisms inasmuch as they are part of the structure of a mechanical contrivance. See "Mechanism"—Standard Dictionary. Claims 2 and 4 of the Bobroff patent, in our opinion, read on the device of the Thompson Voting Machine Company. The fact that elements are described in claims 2 and 4 which are not found in defendant's structure, if any such there be, does not make the claims inapplicable to expressly claimed essential features of the apparatus.

[4] The defendant contends that claim 2 was anticipated by Stout in 1851, and by Huffman in 1855, and that claim 4 was anticipated by Connolly's patent No. 12671, dated April 10, 1855.

The Stout patent claimed "a method of dividing the 'aye' and 'nay' votes, and showing the vote by weighing the 'yea' and 'nay' balls, or their equivalents, in the opposite pans of a scale beam."

The defendant's witness Brady testified that the weight of the balls as shown by the scales of the Stout patent would indicate the number of votes "for which these partic-

ular balls were cast," and consequently the number voting. Just how the members from their seats could see the weight of the balls or how the membership could keep count of the number of times the "aye" and "nay" levers were pulled, the witness did not explain. Moreover, if the members knew the weight of the balls in each pan, and the weight of each ball, it would have required an arithmetical calculation to determine the number of votes cast. Who cast the votes was not made apparent by Stout's device to all the members voting. The patent to Stout neither discloses nor claims any mechanism which could be reasonably regarded as designed to indicate to the membership either the individual votes or the total number of votes cast.

In the Huffman patent a ball for each vote was released and conducted to "aye" and "nay" transparent tubes, "provided with index scales which indicated the number of balls in each tube, and thereby made known to the presiding officer the number of votes cast for each side, and consequently the result of the vote. A mere reading of the specification and the single claim of Huffman's patent establishes that no means whatever for indicating to the membership either the individual or the total vote was provided, or claimed, or disclosed.

Connolly provides no main station means for simultaneously actuating all of the reset means. He does say that he may, "by a device such as is used in hotel registers, by the turning of a single crank, instantly replace in the center column, or conceal, as the case may be, the names of the members, and be ready for a repetition of the operation." That statement, however, discloses at best a manually operated crank for resetting, and can scarcely be regarded as the equivalent of an electrically operated and controlled main station means for simultaneously actuating all of the reset means. Moreover, Connolly certainly did not provide any main station means for rendering any of the substations inoperative. The Connolly means for locking or fastening the tablet of member's names, so that no change could be made after the vote had been disclosed, was designed to prevent any change of the record on the tablet; but that can hardly be accepted as the equivalent of rendering the substations inoperative. Locking the tablets and rendering the substations inoperative may be equally effective in preventing further voting, but it cannot be said that that result is accomplished by the same or equivalent means. The Stout, Huffman, and Con-

nolly patents were not issued for electrically, but for manually, controlled and operated devices. In our opinion there is no ground for the contention that claims 2 and 4 of plaintiff's patent were anticipated by Stout, Huffman, or Connolly.

[5] Defendant's indicator board with a plurality of indicating lights thereon, defendant's individual voting stations for controlling and actuating the indicating lights, defendant's electric circuit, actuated by the clerk's button, and designed for the locking out of the individual voting stations, correspond to plaintiff's main station, including a plurality of indicating mechanisms, plaintiff's individual control means for indicator mechanisms, and plaintiff's common means for rendering such individual control means inoperative. Plaintiff's claims 11 and 12, therefore, read on defendant's device.

The fact that claims 11 and 12 may include elements not disclosed by appellee's apparatus does not make the claims inapplicable to such essential features of appellee's apparatus as are described by the claims. The pamphlet issued by the defendant and introduced in evidence establishes the nature, character, and elements of defendant's voting machine, and that it is an infringement of letters patent issued to Bobroff, and by mesne assignments transferred to plaintiffs.

The decree appealed from is reversed, with costs, and the case is remanded for further proceedings not inconsistent with this opinion.